CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
10/12/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:17-cr-00022 |
| ) | |
| KENDALL DEMARKO WYSINGER ) | |

**MEMORANDUM OPINION AND ORDER**

This case is set for a seven-day trial beginning October 15, 2018. At the pretrial conference held on October 9, 2018, the court heard argument on a number of pending motions in this case, including motions in limine. Additionally, the United States informed the court that it no longer intended to offer into evidence some of the evidence that it had initially intended to offer and that it had referenced in its written briefing.

For the following reasons and for the reasons explained on the record during the pretrial conference, the court rules as set forth below on the pending motions. The court notes, however, that it may revisit any of these rulings, depending on the evidence elicited at trial and the context in which the evidence is offered. The court first discusses any issues or rulings not requiring any analysis under Federal Rule of Evidence 404(b) and then will turn to the remaining evidence the government seeks to admit as either evidence intrinsic to the charged offenses, or, alternatively, under Rule 404(b).

I.  GENERAL RULINGS

**First**, pursuant to the agreement of the parties, the United States' motion in limine to preclude references to sentencing at trial (Dkt. No. 25) is GRANTED.

**Second**, pursuant to the agreement of the parties, defendant's motion to preclude evidence or references concerning life insurance policies (Dkt. No. 68) is GRANTED.

**Third**, with regard to the United States' request to allow two case agents at counsel table (Dkt. No. 71), defendant expressed at the pretrial conference that he did not object to that request. Although the court assumes both case agents will be testifying at trial, the United States has not explicitly said so, nor has it identified the likely topics of either agent's testimony. Nonetheless, based on the defendant's statement at the pretrial conference that he has no objection to the government's request to have two case agents present, the court understands that defendant will not be requesting sequestration for either case agent, and thus that Federal Rule of Evidence 615 will not be implicated at all with regard to those two witnesses. If, however, defendant is asking for the sequestration of all other witnesses except for one case agent, then the government will need to present additional argument to the court explaining why the second case agent is "essential to presenting [the government's] case." Fed. R. Evid. 615(c).[1] Defendant should advise the government and the court if the court's current understanding of his position is incorrect.

**Fourth**, with regard to defendant's motion for disclosure of Rule 404 evidence (Dkt. No. 65), defense counsel advised that he knew the identity of the likely witnesses at trial and no longer had need for a list of witnesses before trial. Defendant still seeks addresses for witnesses or a means to contact them. The government agreed to provide to defendant's counsel, during trial, a list of witnesses expected to testify the next trial day, but only on the condition that the court order defense counsel not to provide that list of witnesses to his client. The court GRANTS IN PART the motion. As described at the pretrial conference, the court ORDERS that, each day during trial, the government shall disclose its expected witnesses for the next day to defense counsel. The court further ORDERS that defense counsel is prohibited from

---

[1] In its motion, the government states that the case is "complex, scheduled for seven days of trial, and the investigatory team is large," and it argues that the two agents are "necessary for the efficient presentation of the government's case." (Dkt. No. 71 at 1.) It has not otherwise elaborated on what renders the second agent essential.

disclosing this information to his client. With regard to the remaining request for addresses or an opportunity to directly contact the government's fact witnesses, that request is DENIED. *See United States v. Jordan*, 466 F.2d 99, 101–02 (4th Cir. 1972) (holding that pre-trial disclosure of witnesses in a non-capital case is not required and that a court abuses its discretion in refusing to order the disclosure of witness names only if, by not requiring disclosure or not allowing a continuance once names are known, the defendant is denied his right of confrontation); *see also United States v. Adams*, 161 F.3d 3, 1998 WL 567823, at *8 (4th Cir. 1998) (unpublished per curiam) (affirming district court's refusal to continue trial to allow investigation of witnesses where names were disclosed twenty-four hours before they were expected to testify and where there had been safety and security concerns regarding witnesses). The government agreed, however, to ask witnesses identified by defense counsel if they were willing to talk with him or his investigator and to provide contact information so that any witness who chose to contact defense counsel or the investigator could do so.

**Fifth**, with regard to evidence concerning defendant's gang affiliation, the government indicated at the pretrial conference that it would not be introducing, in its case-in-chief, any evidence concerning defendant's alleged gang affiliation. This includes any evidence that his tattoos suggest gang affiliation, that he self-identified with a gang through Facebook posts and during an intake interview with the Virginia Department of Corrections, and any evidence concerning gangs through the government's proffered expert on gangs, Eric Fentress. The government reserved its right to introduce any such information if the door were opened during defendant's case, and particularly if defendant called any witnesses or co-conspirators that have a similar gang affiliation. Likewise, defendant retains its ability to challenge the attempted introduction of any such evidence during his case. With that understanding, all counsel agreed

3

that the defendant's motion in limine to preclude references to defendant's tattoos (Dkt. No. 69) and gang affiliation (Dkt. No. 67), as well as the government's motion to admit such evidence (part of Dkt. No. 72), are MOOT.

**Sixth**, the government indicated that it was withdrawing other portions of its motion to admit evidence of other bad acts. Specifically, the government explained that it would not be offering any evidence in its case-in-chief regarding the overdose of J.H. or L.G., including: (1) any testimony through Dr. Carol O'Neal about those overdoses; (2) any threats that Wysinger had allegedly made (either to CW1, or in recorded jail calls), in which he stated that he had intentionally killed J.H. and L.G.; and (3) any testimony through CW1 that Wysinger allegedly made statements about using "hotshots" (a fatal dose of heroin or fentanyl) to kill an addict and said that he intended to get a "hotshot" to a female who was "snitching" on him. So, as to all of that evidence, the motion (Dkt. No. 72) is deemed WITHDRAWN IN PART.

Other portions of the government's motion to admit were not withdrawn. Specifically, the government still seeks to introduce evidence of defendant's threats to J.T., which would include testimony by J.T. about defendant's alleged threats to J.H., and it still seeks to introduce Facebook conversations between the defendant and another individual where defendant said that J.H. was "snitching." As discussed below, the government indicates that the evidence of threats to J.T., as well as that Facebook conversation, help prove ownership and control over a cell phone seized from Wysinger in May 2016. The government also still seeks to introduce the threats defendant allegedly made on Facebook to L.G., an alleged victim of the sex trafficking conspiracy, as well as other threats made by Wysinger to other prostitutes or drug customers during the course of the conspiracy. Lastly, the government still seeks to introduce evidence that, in 2014, defendant attempted to recruit three women as prostitutes and to assist one of those

4

women in traveling from another state into Virginia to work for him.

## II. INTRINSIC OR RULE 404(B) EVIDENCE

### A. Rule 404(b) General Legal Standards

First of all, the government contends that the evidence identified under "Sixth" should not be analyzed under Rule 404(b), because it is intrinsic to the offense or offenses. The government is correct that the rule does not apply to evidence of other bad acts that are intrinsic (as opposed to extrinsic) to the charged offenses. *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996). Other bad "acts are intrinsic when they are 'inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *Id.* (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)). Put differently, "[e]vidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'" *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (quoting *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994)). In analyzing whether the disputed categories of evidence should be excluded, then, the court will first have to determine whether the evidence is intrinsic.

Rule 404(b) deals with the admissibility of "other bad acts" evidence that is not intrinsic. It states in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove
> a person's character in order to show that on a particular occasion
> the person acted in accordance with the character.
>
> . . . This evidence may be admissible for another purpose, such as
> proving motive, opportunity, intent, preparation, plan, knowledge,
> identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2). Notably, Rule 404(b) is a rule of inclusion. *United States v.*

*Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995). "It admits all evidence of other crimes (or acts) relevant to an issue in a trial except that which tends to prove only criminal disposition." *United States v. Masters*, 622 F.2d 83, 85 (4th Cir. 1980) (quoting *Weinstein & Berger's Evidence* § 404(8) (1979)); *United States v. Moore*, 709 F.3d 287, 295 (4th Cir. 2013). Nevertheless, "[e]vidence admissible under Rule 404(b) must still meet Rule 403's requirement that its prejudicial value not outweigh its probative value." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996).

Other-bad-acts evidence is admissible under Rule 404(b) so long as the following are met:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes.
> (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense.
> (3) The evidence must be reliable. And
> (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. McLean*, 581 F. App'x 228, 233 (4th Cir. 2014); *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997) The fourth factor underscores the requirement that all admitted Rule 404(b) evidence must satisfy Rule 403. *United States v. Williams*, 740 F.3d 308, 314 (4th Cir. 2014).

## B. Specific Rulings[2]

**Seventh**, with regard to the category of evidence concerning alleged threats in 2015 that Wysinger made to J.T. and a photo from Wysinger's phone, the court will not exclude that evidence. J.T. is expected to testify that Wysinger accused her of cooperating with law

---
[2] The court continues the numbering from Section I *supra*.

6

enforcement and threatened her as a result. When J.T. denied this, Wysinger requested, and J.T. showed him, copies of her court discovery papers to prove that it was J.H.—and not J.T.—who had provided information about him to law enforcement. Later, a photograph of that paperwork was found on a cell phone seized from defendant. With regard to the photo, the court ruled at the pretrial conference—without objection by defendant—that the information about the photo on the phone, which the government represented was some of the limited evidence linking defendant to the use of that phone during the relevant time-frame, was intrinsic to the charged offenses, relevant, and admissible. The court took under advisement whether J.T. could testify about threats made to her by Wysinger.

The court now concludes that the threat evidence is admissible evidence as intrinsic evidence or, at the very least, under Rule 404(b). According to the government, J.T. was an individual who purchased heroin from Wysinger and she also worked as a prostitute, although not for him. She knew several of the named victims in the indictment and in fact met Wysinger through C.S.S., one of the named victims in the sex trafficking conspiracy. Based on this, the evidence is relevant to show the climate of fear he created, which goes directly to the element that he used threats and coercion to get women working for him in prostitution and to intimidate them from reporting him to the police, as referenced in the indictment. *See, e.g.*, *United States v. Fuertes*, 805 F.3d 485, 493–94 (4th Cir. 2015) (holding that district court did not err in admitting evidence that defendant threatened competitor pimps and a family who helped a prostitute because those threats showed his intent and was evidence of one of the overt acts charged in the indictment: threats aimed at intimidating "his own employees and female prostitutes"). Defendant's primary argument against the admission of this evidence is based on the fourth *Queen* prong, which incorporates Rule 403. But, generally evidence otherwise admissible under

7

Rule 404 is not barred by Rule 403 where it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (citation omitted). That is certainly true here. Given that the jury will have evidence of other threats made by Wysinger toward his victims, this evidence is not more sensational than what the jury will already hear or see. For these reasons, the court will not exclude this evidence under Rule 404(b).

**Eighth**, the court ruled at the pretrial conference that information about threats made by Wysinger on Facebook to others, including threats to L.G., who the government advises is one of the unnamed victims of the sex trafficking conspiracy, is admissible. The court clarifies its ruling that certainly threats made during the course of the conspiracy against *victims* of the conspiracy (such as L.G.) are acts committed in furtherance of the conspiracy and so would be intrinsic evidence and not subject to a limiting instruction. *See United States v. Janati*, 374 F.3d 263, 270 (4th Cir. 2004) ("[T]he government is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment."). With regard to threats made to persons outside the conspiracy and which were unknown to any victims of the conspiracy, those threats likely would not be intrinsic. But those threats would be admissible under Rule 404(b) for the same reasons the court ruled the threats to J.T. are admissible, set forth above. Thus, the court will GRANT IN PART the government's motion (Dkt. No. 72), as to this evidence.

**Ninth**, the last category of evidence that the court took under advisement was evidence that Wysinger recruited or attempted to recruit three women into his commercial sex operation in 2014. The government argues first that this is intrinsic evidence because it is part of the sex trafficking conspiracy. The court notes, however, that the indictment alleges that the conspiracy

8

began in 2015 at the latest. Although the government left the starting date vague, none of these three victims were named in the indictment, and given the dates in the indictment, it is not clear to the court that this would be intrinsic evidence of the sex conspiracy. Certainly, it is not clear that the defendant was put on notice by the indictment of these acts being part of the conspiracy, given the dates alleged and the fact that none of these alleged victims were named. Moreover, the court is not convinced by the government's argument, citing *United States v. Kennedy*, 32 F.3d 876 (4th Cir. 1994), that this prior conduct by Wysinger is part of the same series of transactions as the charged offense. In *Kennedy*, the evidence of prior drug transactions served two important and specific functions: it revealed the defendant's sources and explained how a smaller group fit within the larger conspiracy and became part of that conspiracy. 32 F.3d at 885–86. By contrast, the evidence here—at least as described by the government—serves to highlight that defendant previously attempted to recruit other women to work as prostitutes, but it does not provide any important background information about the charged conspiracy or any information necessary to understand the story of the crime. Thus, the court rules that it is not admissible as direct evidence.

The court concludes, however, that this evidence is clearly admissible under Rule 404(b). Turning to the first of the four factors from *Queen*, the evidence is relevant to show Wysinger's intent, lack of mistake, and his *modus operandi*. *See, e.g.*, *United States v. Jones*, No. 15-cr-174, 2016 WL 10704518, at *3–4 (E.D. La. Jan. 28, 2016) (holding that evidence that defendant previously acted as a pimp for other women was admissible under Rule 404(b) in a sex trafficking case because it shows "his knowledge, intent, lack of mistake, and pattern of conduct"); *United States v. Graham*, No. 14-cr-500, 2015 WL 6161292, at *3–5 (S.D.N.Y. Oct. 20, 2015) (ruling defendant's prior participation in prostitution business and control over

prostitution activities of uncharged victims was relevant as to the defendant's intent or knowledge, as well as his modus operandi, and admitting it under Rule 404(b)). The government represents that Wysinger recruited the victims of the charged conspiracy in much the same manner as the 2014 recruits. This similarity, as well as the proximity in time to the charged conspiracy, renders the evidence highly probative of defendant's knowledge and intent.

As to the second *Queen* factor, the necessity of the evidence may depend on whether it is entirely cumulative of other evidence. At this time, the court believes that it is not so cumulative so as to be unnecessary and will not exclude it on this basis.

As to the third and fourth *Queen* prongs, nothing before the court has called into question the reliability of the evidence, and the court easily concludes that its probative value is not substantially outweighed by the risk of unfair prejudice or confusing the jury. The government's motion to admit (Dkt. No. 72) is therefore GRANTED IN PART as to this evidence.

III. CONCLUSION

For the foregoing reasons, the court makes the rulings stated above with regard to the parties' pretrial motions.

Entered: October 12, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge